The opinion of the Court was delivered, by
Wardlaw, Ch.
By the appointment of the ordinary of An- '• derson district, J. A. M. Cason, on June 6, 1836, became an administrator of the estate of William Cason, who died intestate; and on- November 18,1839, by like appointment, became guardian of,. Cynthia and other infant children of the intestate. In his returns as guardian to the ordinary, it seems that, by £ unintentional inaccuracy,’ as the ordinary reports, he omitted to charge himself with interest on the balance which had been in his hands, as administrator, for some years. On February 23,1846, the ordinary made a decree, that it appears on settlement, that J. A. M. Cason is indebted to his wards in the sum of $2710 39; and on February 27, 1846, Cason confessed a judgment to the ordinary for this sum. Mrs. Cason and Jacob Pickle were appointed by the Court of Equity, March 6, 1846, guardians of .the same wards; and on-April 6, 1846, they, as guardians, gave a receipt to the sheriff for the amount of the judgment confessed- by J. A. M. Cason. James Long and Cynthia Cason intermarried December 28, 1849, and the’ wife did not attain the age of twepty-onc years until March 6, 1850. James Long, on October 21, 1850, cited J. A. M. Cason to account before the ordinary for the mistake as to interest above mentioned; and Cason, appearing by counsel, insisted, that, granting the mistake, he was protected from further accounting by the decree of the ordinary and the judgment at law, which were ratified by the subsequent guardians by their act acknowledging satisfaction-to the sheriff, and further that he was protected by the statute of limitations. The ordinary overruled these defences, and ordered Cason to account further. From this order Cason *62 appealed to tbis Court; and at the sitting for Anderson, in June last, tho Chancellor decreed that Cason was not liable to account, and reversed the order of the ordinary. Long and wife appeal from that decree; on various grounds contesting the sufficiency of Cason’s defences.
The decree of the ordinary, of 1846, cannot be regarded as an estoppel of Long and wife from the further prosecution of their rights. That decree seems to have been made at the instance of the guardian, without the presence of any person authorized to represent the wards. The case, in this particular, is governed by the authority of Miller vs. Alexander, (1 Hill Ch. 27.) There, the ordinary, without citation of the distributees or their being present, upon an ex parte settlement of the accounts of an administrator, decreed a certain sum against the administrator, but omitted to charge him with interest collected upon notes. The Court held the decree not to be conclusive, and say: “It was wholly an ex parte proceeding, made up entirely at the instance of the administrator, to enable him to settle with his cestui que trusts. In order to be conclusive, it ought to be the judgment of the Court, between parties regularly in Court, on the same matter then in issue between them. It must appear by tho proceedings, that the parties were legally in Court.”
Whether the ordinary can vacate his former decree, without a direct application for that purpose — whether the proceeding in this case amounts to such application, and whether the decree, until vacated, must not bo held valid by other Courts, are questions upon which some difference of opinion may exist; and the discussion of them may be waived in the present case.
The same reasoning which establishes the inconclusiveness of the ordinary’s decree, shows also that the judgment confessed by the guardian to the ordinary cannot have the force of an estoppel. In that proceeding, too, the wards were unrepresented.
It may be, however, that the decree of the ordinary in 1846, although not a technical estoppel, is a starting point for the running of the statute of limitations. In procuring that decree, the *63 guardian, Cason, evinced bis intention to terminate bis trust to bis wards. -He intended tbe settlement to bé' in full. He acknowledged bis liability as guardian for tbe amount decreed against bim, and confessed judgment for this sum; and by tbe strongest implication denied all further liability. Moreover, in a few days afterwards, be was displaced from bis trust, and successors to bim appointed by this Court. These successors, more than four years before any further proceeding against bim, received from bim through'the sheriff, tbe amount of tbe decree and judgment, and made no further claim upon bim. They thus ratified tbe ordinary’s decree. These acts of Cason, purporting to be in full execution of bis trust, place bim in tbe character of a stranger to bis former wards and their new guardians, and put them upon the assertion of their rights, at the hazard of losing these rights by lapse of time.-
Teehnieal trusts, as to claims between trustees and beneficiaries, are not within tbe statute ■ of limitations. Put, to use tbe language of our last reported case on this subject, (Brockington vs. Camlin, 4 Strob. Eq. 196,) “ if tbe trustee does an act which imports to be a termination of tbe trust; if be has a settlement which is intended to be in full; if.be settles as to part and claims tbe residue in bis own right; if be denies tbe trust in tbe presence of tbe cestui que trust; these acts, or any of them, will so far- disturb and dissolve the strictly fiduciary relations between the trustee and bis cestui que trust, as that tbe statute of limitations will commence to run from tbe date of such acts.” This doctrine is fully supported by authority. (Starke vs. Starke, Car. L. J. 509 S. C. 3 Rich. Law, 438; Moore vs. Porcher, Bail. Eq. 198; Glover vs. Lott, 1 Strob. Eq. 79; Coleman vs. Davis, 2 Strob. Eq. 340; Payne vs. Harris, 3 Strob. Eq. 39.) In tbe last case there bad been an accounting of the administrators of an intestate before tbe Ordinary, in which some of the distributees, in their absence, were excluded by misapprehension of the provision of the statute of distributions. The Chancellor says: “I take it, that an act done in a public office, open for tbe informa *64 tion of parties interested, must be taken notice of by them ; and that the statute obtained currency against the parties mentioned, from the date of the division.” This remark, although generally true, may not be applicable to extreme cases. A cestui que trust is always barred by length of time operating against the trustee. Hovenden vs. Lord Annesley, (2 Sch. and Lef. 629.) In Lewellin vs. Machworth, (2 Eq. Ca. Ab. 519,) Lord Hardwicke says: “ The rule, that the statute of limitations does not bar a trust estate, holds only as between cestui que trust and trustee, not between cestui que trust and trustee on one side and strangers on the other; for that would make the statute of no force at all, because there is hardly any estate of consequence without such trust.”
Where there is no imputation of fraud, an infant beneficiary will be bound by a legal bar incurred through the laches of his trustee. In Wych vs. East Ind. Co., (3 P. Wms. 309,) A. had agreed with the company for a certain allowance, and afterwards died intestate, leaving an infant son. B. took out administration during the minority of the son, but instituted no suit upon the contract. The son, within the term of the statute after attaining maturity, but not within the term after the cause of action accrued, brought his bill against the company for an account; and they pleaded the statute of limitations. Lord Talbot said: “ The administrator, during the infancy of the plaintiff, had a right to sue; and though the cestui que trust was an infant, yet ho must he bound by the trustee’s not suing in time ; for I cannot take away the benefit of the statute of limitations from the company, who are in no default, and are entitled to take advantage thereof as well as private persons; since their witnesses may die, or their vouchers be lost. And as to the trust, that is only between the administrator and the infant, and does not affect the company.” In a note to this case is cited the opinion of Lord Macclesfield, in The Earl vs. The Countess of Huntington, that a fine and five years’ non-claim would bar a trust term, in favor of a purchaser, though the cestui que trust was an infant. (Pentland vs. Stokes, *65 2 Ba. and Be. 75; Boney vs. Ridgard, 1 Cox, 145; Miller vs. Mitchell, Bail. Eq. 441; Lewin on Trusts, 604.) In Moore vs. Barry, (1 Bail. 504,) an infant legatee of a slave was beld to be barred by the statute of limitations,, where, through the laches of the executor before assent to the legacy, a stranger had acquired title by possession. In Glover vs. Lott, (1 Strob. Eq. 79,) where an executor had paid a legacy of an infant 'to her father, and returned the father’s receipt in his account current to the ordinary, and the infant was afterwards taken in marriage by an adult, it was held, that the husband was barred by the statute in four years from his marriage.
It seems clear upon the authority of these cases, that Long and wife, notwithstanding the infancy of the wife, are barred by the statute of limitations, from opening the settlement and decree ratified by their guardians, if these guardians were their trustees as to the matters of the settlement, and authorized to prosecute thfeir claims for the correction of the errors in the decree. In general, an infant shall lose nothing by non-claim, or neglect in demanding his right; and he is expressly excepted from the operation of our statute of limitations ; but if an adult has the legal title in trust for the infant, or may prosecute suit in his behalf for the matter in controversy, the policy of the statute, to protect possession and preclude litigation, should have full operation. It remains for us to enquire, whether guardians appointed by this Court are not entitled to sue for, and receive the equitable ehoses of their wards.
It is said in Kent’s Commentaries, (2 K. 228,) that a guardian may sell the personal estate of his ward, for the purposes of the trust, without a previous order of the Court, and that, if the sale be fair, the title of the purchaser is undoubtedly good, although the safer course is to have the previous order of the Court. In Field vs. Schieffelin, (7 Johns. Ch. 150,) and in Bank of Virginia vs. Craig, (6 Leigh, 399,) the doctrine is broadly asserted, that guardians have the same title to the personal estate of their wards, as executors have to the personal assets of their testators. It *66 would be hazardous to recognize this doctrine as to the chattels of wards; and this Court in the case of Bailey vs. Patterson, (3 Rich. Eq. 156,) set aside the purchase of a slave from a guardian. In general, guardians cannot change the nature of infant’s estates, but they may even do that, as is said by Lord Hardwicke in Inwood vs. Twyne, (Amb. 419, 2 Eden, 148,) “ under particular circumstances; and the Court will support their conduct, if the Court would do it under the same circumstances.” They are entitled, however, to the possession and management of all the property of their wards, and to the collection and disbursement of all the income, profits and credits arising therefrom. Their authority extends to bind the infants by all such acts as appear to be for the advantage of the infants, and for which the guardians are liable to account. I apprehend that a guardian has plenary right to receive moneys coming to his ward, and to prosecute, compound and acquit any debt or liability to the ward. He always acts under responsibility to his ward for the faithful and judicious performance of his trust, and is liable for any fraud, gross negligence, or other breach of trust. Rut a stranger dealing with him as to the choses of the ward, may rightfully presume that he is acting for the benefit of the infant, and in the absence of any evidence of collusion, does not partake of the guardian’s responsibility. It appears to me highly important to the interests of infants and to the repose of the community, that guardians should have such power over the rights and credits of their wards. If the debtor of the infant, cannot safely account and pay to the guardian, for the hire of a slave or any other liability, the estates of infants must suffer the impoverishment resulting from having every demand settled by a law suit. If the statute will not run against an infant represented by a guardian, we may conceive of a case in which a debtor would be liable to reclamation for unde-signed mistake after more than twenty-four years. Why should an infant with guardian be barred by lapse of time any more than by the statute of limitations ? But it will hardly be disputed that, as to such choses as cannot be assigned at law, and are *67 not legal demands, he is barred by lapse of time. (Miller vs. Mitchell, Bail. Eq. 437; Buchan vs. James, Sp. Eq. 382.) The hardship of barring by the statute, an infant after a settlement made by his guardian, is not much greater than in the case of any other beneficiary who is barred through his trustee.
These views have strong support from authority. In Field vs. Schieffelin, the sale and assignment by a guardian to a stranger of bond and mortgage belonging to an infant, were held valid. The same doctrine is held in Livingston vs. Jones, (Harring. Ch. 165.) So, also, the guardian’s transfer of the infant’s stock in a bank is valid — (Bank of Virginia vs. Craig.) The case of Ellis vs. Essex Mer. Bridge, (2 Pick. 243,) was like the last, except that the guardian was of one non compos. Ex parte Dale, Buck, 365, is cited by Macph. on Infants, 541, for the doctrine, that money left by a guardian in the hands of one who becomes bankrupt, passes to the assignees, for such a trustee is the true owner. A guardian is permitted to prove, under a commission of bankruptcy, a debt due to an infant. Ex parte Belton, 1 Atk. 251; Walcott vs. Halil, 2 Bro. C. C. 305.
In Capehart vs. Huey, (1 Hill Ch. 409,) where the guardian executed a release of the ward’s claims against a witness, in order to render the witness competent, the^ Court say : “A guardian, as the oificer of the Court of Equity, is charged with the preservation of all the rights and interests of the ward. He cannot, however, generally change the nature or diminish the capital of the estate; but with this exception, he is authorized to do any act for the infant which a prudent man in the management of his own business would do. Such an act must of necessity fall within the rule, well stated in Bing, on Inf. and Cov. 152: ‘ it seems generally that those acts of the guardian are binding on the infant, which are for the benefit of the infant, and for which the guardian can account; for so far his authority extends.’ The release here is an act for which the guardian can and must account, if he thereby fails in recovering the share of his ward.” Now, if the guardian has authority to release one liability to his ward, he may any other in *68 right merely; and if for one purpose, he may for any other appearing to be for the advantage of the infant; and in every case he is liable to account to his ward. It would be difficult to state any matter, more clearly for the benefit of the infant, than the ascertainment of his distributive share of his father’s estate, and the adjustment and settlement of the accounts of his former guardian.
It is held, in Johnson vs. Johnson, (2 Hill Ch. 284,) that, where an executor becomes guardian of an infant legatee ho must account in the latter character, for whatever funds he had in his hands as executor wore transferred, by operation of law, to his account as guardian. Simlckins vs. Cobb, (2 Bail. 60.) On what principle can his debt as executor he regarded as extinguished by his appointment as guardian, unless as guardian he had tho legal right to settle and adjust and receive the balance due on his accounts as executor.
In Massey vs. Massey, (2 Hill Ch. 496,) the statute of limitations was held to protect the ward, sued after he became of age with his guardian, from reimbursement of an erroneous payment made in his behalf to his guardian, more than four years before bill filed, but less than four years after the ward’s maturity, although the guardian himself did not plead the statute. That case is the exact correlative of the present one; and tho rule should work both ways. If the infant be protected, under the statute, by the guardian’s receipt of money four years before suit, he should be barred by the guardian’s laches in not prosecuting and receiving for the statutory term.
I conclude, that Cynthia Long, having guardians competent to protect her interests, and to prosecute in her behalf for any error in the settlement of the accounts of her former guardian, is not exempt by her infancy from the bar of tho statute of limitations.
It is not necessary in this case, to determine what may bo the operation of the statute against an infant with guardian, as to legal demands standing in the name of the infant. Our judgment is limited to the ease presented. "We hold, that, as to a .chose of the infant, not assignable at law, and peculiarly within *69 the power and duty of the guardian, the laches of the guardian, in the absence of collusion, by operation of the statute of limitations, bars the infant as to strangers, and leaves him to his remedy against the guardian.
It is ordered and decreed, that the appeal be dismissed, and the decree be affirmed.
Johnston and Dunkin, CC., concurred.
Daugan, Ch.
I think that where the ordinary has made a decree on a subject matter and between parties within his jurisdiction, such decree is conclusive unless it should be reversed or modified on appeal. And though there be errors or inaccuracies in it, he has no power to entertain an application in the nature of a bill of'review for the correction of those errors. His official power over the matter ceases when he has rendered his decree. He has not the power even to enforce his own decrees. More strongly would the case appear, where the parties, as in this instance, have regarded the proceedings before the ordinary as a final settlement, and have received the shares decreed to them in full.
I think also that where an infant has a guardian who makes a settlement for him, or, which is the same thing, adopts one already made and gives a discharge, if the subject matter is such as falls within the power and authority of the guardian, the infant is as much concluded as if he was an adult. A settlement like this could only be opened upon such general grounds of equitable relief as would bo available to all persons not under the disability of infancy.
On the foregoing grounds I concur in the decree which has been rendered by this Court. But I am not prepared to admit, or to place my concurrence on the ground that an infant is to be deprived of the saving in the statute of limitations in his favor, because he has a guardian. The statute itself makes no such distinction; nor am I aware of any authority for it, either as to* chattels or choses in action. It is said that the statute runs *70 against an infant from tbe time be bas a guardian, because tben be bas some one to look after bis rights and to sue for him if necessary. He may sue before be bas a guardian if he chooses. Tbe statute places him under no disability from suing, but gives him a longer time to bring bis action. Married women and lunatics may also sue during them respective disabilities; yet it bas never been supposed, that, because they might sue, this was to destroy or to take away tbe savings in tbe statute in respect to them.
Tbe statute of limitations runs against trustees, executors and administrators, because it runs against the legal estate, which is vested in them for tbe purposes of their trusts. And tbe rights of their cestui que trusts may be lost by their laches, where the statute has been permitted to run so as to create a bar. And in such a case, the only remedy would be against the trustee for an abuse of trust. But the guardian is not possessed of any legal estate in his ward’s chattels or choses. If a guardian should take a note or other security, payable to himself for the rents and profits of his ward’s real or personal estate, or calling in the ward’s choses should reinvest them in other securities payable to himself, in these and similar cases I should have no hesitation in saying, that the statute of limitations would run against the guar] dian, and through the guardian against the infant ward; for the reason that the legal estate in such securities was vested in the guardian. But in no case, where the legal title in the ward’s estate is not vested in the guardian, would I say that the statute would run against an infant except under the specific provisions of the Act itself.

Decree affirmed.